UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL PARKS, | : | CIVIL NO: 1:13-CV-01791 |
| Plaintiff, | : | (Judge Rambo) |
| | : | |
| v. | : | |
| | : | |
| FRANCIS FASCIANA, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT & RECOMMENDATION

**I. Introduction.**

Darrell Parks ("Parks"), a prisoner proceeding *pro se*, filed this *Bivens* action,[1] alleging constitutional violations of the First and Eighth Amendments. With respect to his Eighth Amendment claim, Parks alleges that the defendants were deliberately indifferent to his serious medical needs when they denied him appropriate medical treatment for his shoulder; when they discontinued a medical permit which allowed him to be double cuffed in the back or single cuffed in the

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights. "A *Bivens* action, which is the federal equivalent of the [42 U.S.C.] §1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

front; and when they prevented his compliance with the prison's grievance system as he made complaints about his shoulder and the defendants' decision to discontinue the medical permit. With respect to his First Amendment claim, Parks alleges that the defendants retaliated against him because of the grievances he filed. Currently pending is the defendants' Motion to Dismiss and/or Motion for Summary Judgment. For the reasons that follow, it is recommended that the defendants' pending motion be granted.

**II. Background and Procedural History.**

Parks, formerly a prisoner at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"),[2] filed a complaint in this Court on June 28, 2013, naming five defendants: (1) Francis Fasciana ("Fasciana"), a mid-level practitioner; (2) Kevin Pigos ("Pigos"), a medical doctor director; (3) Andrew Ciolli ("Ciolli"), an Executive Assistant; (4) an unknown Regional Administrative Coordinator ("Administrative Coordinator"); and (5) Harrell Watts ("Watts"), General Counsel. *Doc. 1*. In his complaint, Parks alleges that he sustained a shoulder injury in 1999, and upon entering the Bureau of Prisons ("BOP") in 2001, he was evaluated by an orthopedic doctor and provided a medical permit that allowed him to be doubled cuffed in the back or single cuffed in the front. *Doc. 1 at 4-6*. Upon entering USP Lewisburg in 2011, however, Parks alleges that

---

[2] Parks is currently incarcerated at FCC Beaumont in Beaumont, Texas.

Fasciana, pursuant to Pigos's order, discontinued that medical permit, manifesting a deliberate indifference to Parks's serious medical needs. *Id.* 4-8. Parks further alleges that their decision to discontinue the medical permit was made in retaliation to Parks's filing of grievances against them. *Id.* at 8. Moreover, Parks alleges that Fasciana and Pigos have an improper and/or inadequate medical care system in place for sick-calls, which also manifests a deliberate indifference to Parks's serious medical needs. *Id.* at 6, 8. Additionally, Parks alleges that Fasciana and Pigos denied him medication, also demonstrating a deliberate indifference to his serious medical needs. *Id.* at 6. Finally, Parks alleges that Ciolli, Watts, and the Administrative Coordinator caused further pain and damage to his shoulder when they discouraged his use of the administrative remedy process by rejecting his grievances for unfounded or improper reasons, also manifesting a deliberate indifference to his serious medical needs. *Doc. 1* at 8-10. Based on these allegations, Parks asserts constitutional violations of the First and Eighth Amendments. *Doc. 1*. As relief, Parks seeks a declaratory judgment, injunctive relief, compensatory damages, and punitive damages.[3] *Id.* at 8-10.

---

[3] Parks's requests for declaratory and injunctive relief against the defendants at USP Lewisburg are now moot because he was transferred to another prison, namely FCC Beaumont. *See Sutton v. Rahseed,* 323 F.3d 236, 248 (3d Cir. 2003) (explaining that an inmate's transfer from the facility complained of moots claims for equitable and declaratory relief); *Johnson v. Wenerowicz,* 440 F. App'x. 60, 62 (3d Cir. 2011) (holding that the prisoner's request for injunctive and declaratory

The defendants filed a Motion to Dismiss and/or for Summary Judgment (*doc. 14*), along with a brief and documents in support of that motion (*doc. 21, 22*). The defendants contend that Parks has failed to properly exhaust his administrative remedies as to his claims against the defendants; Parks's complaint fails to state a First Amendment retaliation claim upon which relief can be granted; Parks's Eighth Amendment claim fails since he cannot show deliberate indifference; Parks has no constitutional right to an administrative remedy process; and finally, Parks cannot show the prerequisite of personal involvement in establishing a violation of his constitutional rights. *Doc. 22*. The defendants filed a statement of material facts (*doc. 21*) in support of their motion to dismiss and motion for summary judgment (*doc. 14*). Because the defendants submitted documents outside of the pleadings, which the Court considered, their motion will be construed as a motion for summary judgment.

Parks responded by filing a brief in opposition to the defendants' motion, in which he requests summary judgment on his own behalf as well as opposes the defendants' motion. *Doc. 40*.[4] Parks also filed a statement of material facts. *Doc.*

---

relief against the named defendants was rendered moot by his transfer to another prison).

[4] Parks titled *Doc.* 40 as "Plaintiff's Opposition Motion to Defendants' Motion to Dismiss and/or Summary Judgment, and Counter Claim for Summary Judgment." Parks attached to this document another document entitled "Brief in Support of Plaintiff's Opposition Motion to Defendants' Motion to Dismiss and/or Summary

*41* and exhibits (*doc*. 41-1). The defendants responded by filing a reply brief (*doc. 42*). For the reasons that follow, it is recommended that the defendants' motion for summary judgment be granted.

**III. Summary Judgment.**

    **A. Summary Judgment Standards.**

The defendants moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v.*

---

Judgment, and Counter Claim for Summary Judgment." *See Doc*. 40-2. He also attached a declaration to *Doc*. 40. *See Doc*. 40-3. The Court construes *Doc*. 40 and the attachments to *Doc*. 40 to be Parks's brief in opposition to the defendants' motion as well as a declaration in opposition to the defendants' motion.

*Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

6

'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

### B. Standards for Material Facts.

A party who seeks to resist a summary judgment motion must comply with Local Rule 56.1, which specifically provides that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements" and that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Under this Rule, the failure to follow these instructions and appropriately challenge the material facts tendered by the moving party means that those facts are deemed admitted. Further, a party opposing a motion for summary judgment may not "rely

8

merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, "[o]nce the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Id.*

### C. Material Facts.

In this case, the defendants filed a statement of material facts (*doc. 21*) in support of their motion for summary judgment (*doc. 14*), and although Parks filed documents in response (*doc. 40, 41*), he has not responded to the numbered paragraphs of the defendants' statement of material facts as required by Local Rule 56.1, nor has he pointed to evidence in opposition to the defendants' statement of material facts, as required by Local Rule 56.1, sufficient to create a genuine material factual dispute. Thus, the properly supported facts set forth by the defendants are considered undisputed for purposes of their summary judgment motion. With respect to the question of administrative exhaustion, the undisputed facts reveal the following:

The BOP has established a three-tier administrative remedy procedure with respect to inmate complaints, found at 28 C.F.R. § 542.10 *et seq.* An inmate must initially attempt to resolve the dispute informally with institution staff. 28 C.F.R. §

542.13(a). In the event informal resolution is unsuccessful, the inmate may file a formal complaint with the warden within twenty calendar days of the complained about event. 28 C.F.R. § 542.14(a). If dissatisfied with the warden's response, the inmate may appeal to the Regional Director within twenty calendar days of the warden's response. 28 C.F.R. § 542.15(a). If the Regional Director denies the appeal, the inmate may take a final appeal to the General Counsel within thirty calendar days from the date of the Regional Director's response. *Id.* The administrative remedy process is not complete for purposes of exhaustion until the complaint has been filed at all levels of the process and has been denied at all levels prior to filing suit in federal district court. *Id*.

Parks, a prolific grievant, has utilized this administrative remedy process quite often, filing a total of 355 administrative remedies since his time spent with the BOP, and a total of 90 administrative remedies since arriving at USP Lewisburg on September 19, 2011, up until the time he filed his complaint in this Court on June 28, 2013. *Doc. 21-1* at 4, ¶5. Parks filed four administrative remedies that refer or relate to the allegations and/or the defendants named in this complaint: Administrative Remedy Identification ("Remedy Number") 663657, Remedy Number 690779, Remedy Number 710530, and Remedy Number 710756. *Doc. 22* at 3-4. The undisputed evidence, however, reveals that Parks made only

halting, and procedurally incomplete, efforts to exhaust three of these administrative remedies before filing suit in this Court.

Parks's Remedy Number 663657, filed on November 7, 2011, concerning his handcuff restriction, was rejected at the institutional level for his failure to attempt informal resolution. *Doc. 21-1* at 4, ¶7. Parks resubmitted his grievance within the ten days allotted to him; however, he was rejected once again for his failure to attempt informal resolution. *Id.* According to the institution's administrative remedy records, Parks was advised to either submit a copy of his informal resolution attempt and answer, or a memo from prison staff, verifying his attempt to resolve the matter informally. *Id.* at 15. Parks failed to re-submit his appeal within the additional ten days afforded to him. Id. at 4, ¶7.

Parks exhausted Remedy Number 690779, which he filed on or about May 22, 2012, and exhausted on March 11, 2013. Although Remedy Number 690779 names Fasciana, Parks complains solely about medical staff and treatment of an injury to his hand that allegedly occurred on April 28, 2102, and not about his shoulder injury and reinstatement of a medical permit requiring him to be double cuffed in the back or single cuffed in the front. *Id*. at 4, ¶8; *see also Doc*. 41-1 at 59.

Parks's Remedy Number 710530, filed on October 30, 2012, also concerning his handcuff restriction, was rejected at the institutional level for including more than one continuation page and lacking specificity. Upon rejection, Parks appealed directly to the Regional Office, where he was rejected for failing to properly file at the institutional level. *Id.* at 4, ¶9. According to the institution's administrative remedy records, Parks was advised to follow instructions on the rejection notice from the institution and to resubmit to the warden. *Id.* at 43. Yet, Parks failed to do so, and instead, he appealed to the Central Office where he was rejected for failing to properly file at both the institution and Regional Office levels. *Id.* at 46. The Central Office, like the Regional Office, advised Parks to resubmit to the institution, which he failed to do. *Id.*

Parks's Remedy Number 710756, filed on October 31, 2012, was rejected for raising numerous unspecified medical complaints at the institutional level. *Id.* at 4, ¶10. Parks, however, appealed directly to the Regional Office where, not surprisingly, he was rejected for failing to comply with the grievance process at the institutional level. *Id.* The institution's administrative remedy records reveal that the Regional Office advised Parks to follow instructions from the institution and resubmit to the warden. *Id.* at 43. Yet, Parks appealed directly to the Central Office, where he was rejected for failing to fix the issues that were identified for

him at the institutional level. *Id.* at 46. He was advised to resubmit, but he never did. *Id.*

It is on these facts that the defendants move for summary judgment, asserting that the undisputed evidence shows that Parks failed to exhaust his administrative remedies prior to filing this lawsuit. *See doc. 22*. This Court agrees with the defendants and recommends that their motion for summary judgment be granted.

**IV. Discussion.**

The defendants are entitled to summary judgment because the undisputed evidence establishes that Parks has failed to properly, and fully, exhaust his available administrative remedies prior to filing this action.

**A. The Prison Litigation Reform Act's Exhaustion Requirement.**

Pursuant to the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner, such as Parks, is required to exhaust his available administrative remedies before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 299 (3d Cir. 2000); *Porter v. Nussle*, 534 U.S. 516, 520 (2002) (finding that the exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences," regardless of whether those conditions generally affect all prisoners or only one in

particular). This exhaustion requirement is strictly enforced by the courts because of the important public policies that it promotes. *Ball v. SCI Muncy*, No. 1:08-CV-700, 2011 WL 6130600, at *7 (M.D. Pa. Nov. 21, 2011). As the United States Court of Appeals for the Third Circuit has observed:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process.

*Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). Given these important policy considerations, courts have typically imposed an across-the-board rule, requiring prisoners to exhaust all of their available administrative remedies before filing suits in federal court. *Ball*, 2011 WL 6130600, at *8.

Courts have also imposed a procedural default component on the exhaustion requirement, finding that a prisoner may be barred from subsequently litigating claims in federal court when that prisoner fails to fully, or timely, complete the prison grievance process. *Id.* at *8. Thus, the manner in which a prisoner must comply with the grievance process "will vary from system to system and claim to claim," because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211-12 (2007).

14

The BOP, for instance, has adopted regulations that establish the specific steps that an inmate must follow in order to properly, and timely, exhaust his administrative remedies. *See* 28 C.F.R. § 542.10 *et seq*.

An inmate will not be held to the strict enforcement that §1997e's exhaustion requirement mandates, however, when the conduct of prison officials directly caused, or contributed to, the inmate's procedural default on a grievance. *See Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *Oliver v. Moore*, 145 F. App'x 731, 735 (3d Cir. 2005) ("An administrative remedy may be found to be unavailable where a prisoner is prevented by prison authorities from pursuing the prison grievance process."); *Smith v. Lindsey*, No. 1:13-CV-2914, 2015 WL 1651115, at *6 (M.D. Pa. Apr. 14, 2015). Accordingly, "an inmate's failure to exhaust will only be excused 'under certain limited circumstances….'" *Harris v. Armstrong*, 149 F.App'x 58, 59 (3d Cir. 2005).

Whether an inmate has exhausted all available administrative remedies is a question of law that is to be determined by the court. *See Small v. Camden Cnty*., 728 F.3d 265, 269 (3d Cir. 2013). Moreover, "[i]f there is a question as to availability of administrative remedies, summary judgment or dismissal is inappropriate." *Mendez v. Sullivan*, No. 3:11-CV-287, 2012 WL 760724, *4 (M.D.Pa. Mar. 7, 2012).

### B. Parks's Complaint Against the Defendants Should be Dismissed as Unexhausted.

Here, the undisputed material facts show that the three grievances relating to the allegations and defendants named in Parks complaint, specifically Remedy Numbers 663657, 710530, and 710756, were never fully or properly exhausted. Instead, such grievances were filed in what was plainly a procedurally inappropriate fashion. Regarding all three administrative remedies, Parks was allotted additional time, advised to resubmit edited grievances, and/or advised to resubmit his rejected grievances to the appropriate administrative level. *See Doc. 21-1*. Yet, Parks did not submit edited versions of his grievances, nor did he resubmit his grievances to the appropriate administrative levels. Thus, Remedy Numbers 663657, 710530, and 710756 were rejected because of Parks's own failure to comply with the administrative requirements of the prison's grievance system.[5] *See Doc. 21-1* at 14, 15, 18, 26, 36, 39, 40, 43, 46. Thus, Parks has procedurally defaulted with respect to these grievances. *See also Smith v. Vidonish*, 210 Fed. Appx. 152, 157 (3d Cir. 2006) (finding that the inmate, contrary to his own contentions, was not prevented from exhausting his administrative remedies

---

[5] To the extent that Parks alleges he was prevented, frustrated, or otherwise discouraged from complying with the prison's grievance system, he has not supported such allegations with competent proof that he was misled by prison officials, that he was impeded in filing a timely grievance, or that there was some other extraordinary circumstance that intervened and prevented his compliance with the grievance process.

when his grievance was rejected for noncompliance because he was instructed to submit an edited grievance).

As for the grievance Parks exhausted, Remedy Number 690779, the issues complained of are not relevant to the allegations against the defendants named in the complaint. Although Parks names Fasciana, Remedy Number 690779 relates to medical care and staff in connection with a hand injury Parks allegedly incurred. There is no mention in Remedy Number 690779 of the shoulder injury and the issue of reinstatement of a medical permit pertaining to handcuffing complained of in the instant matter.[6] *See Docs. 21-1* and *41-1*.

Parks, therefore, has failed to administratively exhaust his claims prior to filing suit in this Court. Since administrative exhaustion is a legal prerequisite to litigation, his failure compels us to recommend that the defendants' motion for summary judgment be granted, and the lawsuit dismissed. Moreover, it is this failure that bars him from further pursuing these claims in federal court.[7]

---

[6] Parks also submitted grievances that he filed at previous BOP institutions, but those grievances are outside the relevant time period and do not pertain to USP Lewisburg.

[7] Because it is recommended that this suit be dismissed on administrative exhaustion grounds, the merits of Parks' First Amendment and Eighth Amendment claims, as set forth in his complaint, will not be addressed.

## V. Recommendations.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the defendants' motion for summary judgment be **GRANTED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of October, 2015.

                                            S/Susan E. Schwab
                                            Susan E. Schwab
                                            United States Magistrate Judge